FILED

MAR 0 8 2021

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

# United States District Court
### Eastern District of North Carolina
### Western Division

Case No.  5:21-CT-3068

(To be filled out by Clerk's Office only)

Jason D. Smith, Curtis Cardwell 1165268
Jimmy Locklear #0523092          Inmate Number 0696180
*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

John Godfrey, Marshall Pike,
Lt. Thompson, Lt. Vernado, Every
Shift Captain on duty from 12/23/20
to 12/26/20, Lt. Guthrie
*(In the space above enter the full name(s) of the defendant(s). If you cannot
fit the names of all of the defendants in the space provided, please write
"see attached" in the space above and attach an additional sheet of paper
with the full list of names. The names listed in the above caption must be
identical to those contained in Section IV. Do not include addresses here.)*

## COMPLAINT

*(Pro Se* Prisoner)

Jury Demand?
☑ Yes
☐ No

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from
public access to electronic court files. Under this rule, papers filed with the court should *not*
contain: an individual's full social security number or full birth date; the full name of a person
known to be a minor; or a complete financial account number. A filing may include *only*: the last
four digits of a social security number; the year of an individual's birth; a minor's initials; and
the last four digits of a financial account number.

## I.    COMPLAINT

*Indicate below the federal legal basis for your claim, if known. This form is designed primarily for pro se prisoners challenging the constitutionality of their conditions of confinement, claims which are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).*

☑  42 U.S.C. § 1983 (state, county, or municipal defendants)

☐  Action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) (federal defendants)

☐  Action under Federal Tort Claims Act (United States is the proper defendant; must have presented claim in writing to the appropriate Federal agency and received a notice of final denial of the claim pursuant to 28 U.S.C. § 2401(b))

## II.    PLAINTIFF INFORMATION

Jason D. Smith / Curtis Cardwell / Jimmy Lockbear
Name

0696180 / 1165268 /
Prisoner ID #

Harnett Correctional Institution
Place of Detention

P.O. Box 1569
Institutional Address

Lillington          NC          27546
City          State          Zip Code

## III.    PRISONER STATUS

*Indicate whether you are a prisoner or other confined person as follows:*

☐  Pretrial detainee   ☐ State   ☐ Federal
☐  Civilly committed detainee
☐  Immigration detainee
☑  Convicted and sentenced state prisoner
☐  Convicted and sentenced federal prisoner

## IV.   DEFENDANT(S) INFORMATION

*Please list the following information for each defendant. If the correct information is not provided, it could result in the delay or prevention of service. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.*

Defendant 1: __John Godfrey__
Name

__Superintendent of Harnett Correctional Inst__
Current Job Title

__1210 East McNeil St.__
Current Work Address

__Lillington__          __NC__          __27546__
City                    State              Zip Code

Capacity in which being sued: ☐ Individual ☐ Official ☑ Both

Defendant 2: __Marshall Pike__
Name

__Assistant Superintendent of HCI__
Current Job Title

__1210 East McNeil St__
Current Work Address

__Lillington__          __NC__          __27546__
City                    State              Zip Code

Capacity in which being sued: ☐ Individual ☐ Official ☑ Both

**Defendant(s) Continued**

Defendant 3:  Lt. Thompson
Name

Lieutenant at HCI
Current Job Title

1210 East McNeil St.
Current Work Address

Lillington          NC          27546
City                State       Zip Code

Capacity in which being sued: ☐ Individual ☐ Official ☑ Both

Defendant 4:  Lt. Vernado
Name

Lieutenant at HCI
Current Job Title

1210 East McNeil St
Current Work Address

Lillington          NC          27546
City                State       Zip Code

Capacity in which being sued: ☐ Individual ☐ Official ☑ Both

Def. 5: Lt. Guthrie
Lieutenant at HCI
1210 East McNeil St.
Lillington, NC   27546
                    ☑ Both

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: Harnett Correctional Institution

Date(s) of occurrence: 12/23, 24, 25/2020

State which of your federal constitutional or federal statutory rights have been violated:

8th Amendment

---

*State here briefly the FACTS that support your case. Describe how each defendant was personally involved in the alleged wrongful actions, state whether you were physically injured as a result of those actions, and if so, state your injury and what medical attention was provided to you.*

FACTS:

1) On 12/23/20 at approximately 5:30 PM, Defendant Lt. Thompson was attempting to transfer me to housing dorm K. I told her that an inmate in K had threatened to kill me so I was refusing to be housed there.

Who did what to you?

2) Def. Lt. Thompson told me that if I didn't go into K dorm, she would lock me in a holding cell until after Christmas.

3) A holding cell is an 8 foot tall cage, screwed to a wall in the hallway of L-Dorm. It is 3x4 feet wide and has no bunk because it is not designed for a man to sleep in. An adult cannot stretch out while laying on the floor of this 3x4 ft cage.

4) Several officers have told me that 4 hours is the maximum amount of time for holding an inmate in one of these cells, unless a time extension is approved by the "top" of the command chain.

5) At 6:08 PM I was locked in the L-Dorm holding cell with no mat, blanket, sheets or pillow, on 12/23/20.

6) Later that night, Officer In Charge (OIC) Lt. Guthrie told an officer to put a mattress in the cell to get me off the floor, which I had been curled up sleeping on for hours, unable to stretch out because the inhumane dimensions of the cage.

What happened to you?

7) I was provided with a regular bunk mat, approx. 3 × 7 ft. Being that the cage I was locked in was not designed or intended for overnight use, the mat would not lay flat on the floor. This can all be seen on the camera footage that I requested be preserved on the grievance that I submitted on 12/26/20 upon being released from the cage and assigned to L4-5, my current bunk.

8) Although I was given a mat, I was given no sheets, blanket or pillow.

When did it happen to you?

9) It was below 30° that night and I was just feet from a door that led outside. It was below 40° for most of the time that I was locked in this cage and I was constantly chilled by cold blast of air whenever staff and inmates opened this door to go out or come in.

10) The lights stayed on 24 hours a day which deprived me of sleep, along w/ the constant traffic from the janitor's closet, the door to segregated housing and the door to the canteen — all within mere feet of this cage.

11) Several sergeants and officers who had observed me on the floor had remarked that 4 hours was the legal limit for holding an inmate in this cage.

Where did it happen to you?

12) The tone of their comments was that I must've pissed off a captain or lieutenant and whatever it was was above their pay grade and they weren't getting in it to help me.

13) However, on 12/25/20, Sgt. Edington tried to get me released by calling Lt. Vernado. After telling her that I

had spent 2 nights in this cage, and that I was requesting to be released, she refused to allow him to release me, saying that it wasn't her call.

14) Lt. Vernado had a duty to act on my behalf as well as the authority to release me from the cage.

15) For the 61 hours that I was illegally locked in a 3x4 cage, I was unable to wash my hands before meals. I was unable to brush my teeth. Of course, there is no running water or toilet in this cage so I was escorted to housing dorms L4 or L3 or to L-Seg to use those facilities.

16) This cage is directly in front of a working camera that I know was being actively monitored by administrative staff because C.O.s were constantly reminding inmates of this fact whenever they would stop to ask me questions or get too close to the bars.

17) Defendants John Godfrey and Marshall Pike have access to the video feed from this camera, as do officials at NC DPS headquarters in Raleigh, NC.

18) Everyone with access to this feed owed me a duty of care and knew or should've known that my extended confinement in a 3x4 foot cage was cruel, unusual, degrading, humiliating and in violation of the 8th Amendment.

19) It is in my medical records, on file w/ DPS, that I have scoliosis of the spine and that being curled up in this 3x4 foot cage for 61 hours would've cause me intense pain, suffering and emotional distress.

20) It was Defendant Lt. Thompson's intention to punish me with extended confinement in this 3x4 ft cage because on 12/23/20 she threatened to leave me in one until after Christmas IF I refused to go into K-Dorm.

21) There existed other housing options than Placement in K-Dorm on 12/23/20, but it was late and first shift officers wanted to go home at 6 PM, so sticking me in a 3x4 ft cage was convenient and had become a customary practice at HCI by then.

22) 5 head counts are performed daily, with every housing dorm reporting their exact number of inmates. These results are entered into a log and an examination of these logs will reveal that bed space existed in other dorms at 5:30 PM on 12/23/20.

23) L4-5, where I was transfered to on 12/26/20 at approx. 7 AM, had been available since 7 AM on 12/24/20 when the inmate whose bunk it had been, was released.

24) The "Step Three - Administrative Remedy Response" to my grievance (Ex. 1) states: "... in order to provide for your safety you were placed in a single cell environment away from the general population." (Ex. 2) but this is not true.

25) As the video footage will show, 4 housing dorms (approx. 136 convicted felons) had access to me as I lay on the floor in the hallway that they walked through to go outside. Anyone of them could've thrown urine on me or assaulted me through the bars. No C.O.'s were standing gaurd to protect me from an inmate assault. In fact, no C.O.s were ever close, or keeping an eye on me from a

8

distance which is why administrators monitoring the camera in operations, had to make phone calls to Lt control to tell C.O.'s when to run inmates away who had stopped near my cage.

26) The Defendants were deliberately indifferent to my suffering and chose not to interfere with Def. Lt. Thompson's punishment of me because they saw it as her right to punish me as she had seen fit.

27) Def. Godfrey, Pike and every shift Captain were Lt. Thompson's superiors and had the authority to intervene on my behalf but didn't because Def. Godfrey and Pike, the Superintendent and assistant superintendent, had established a culture here at HCI where inhumane treatment are the norm. Cruel and unusual punishment is commonly used to deter inmates from bucking. When men walk by and see one of their own locked in a 3x4 foot cage day after day, it sends the message that this can happen to you too. This horrible torture of being unable to stretch out or walk, sleeping on the floor in a busy hallway near a door, in the draft of cold winter winds, unable to wash or brush teeth and where the lights never go off, with no blanket or pillow and nothing to break the monotony — day after day, no books, no radio, no tv, no phone calls and unable to write a letter to your family — this is now an acceptable form of punishment at HCI.

28) I informed all of the floor officers, on each shift, that I have chronic kidney problems that require me to make frequent trips to the bathroom, still I was forced to urinate in an 8 oz. styrofoam cup on 3 occasions when I wasn't able to get a C.O.'s attention.

29) Defendants were deliberately indifferent to my need for reasonably adequate sanitation and the basic elements of hygiene.

30) Knowing that I was lying in a highly trafficked area, in the direct draft from a door leading outside, with no sheets or blankets to protect me from these extreme outdoor weather conditions, Defendants were deliberately indifferent to my extended exposure to inclimate conditions.

31) The effectiveness of sleep deprivation as a tool of torture has long been recognized and 61 hours of constant illumination made it difficult for me to sleep.

32) I was treated worse than a stray dog at an animal shelter by NCDPS officers who still have legal authority over my person.

33) When I was transfered to L4-5, I learned from L4-7, inmate Grant Haze (# 1113277) that I was the 4th person he'd seen spending the night in that cage.

34) L4-13, Jimmy Locklear had spent approximately 2 days in similar circumstances and L4-22, Curtis Cardwell, had spent the night in a similar cage in O-Dorm. These men are co-plaintiffs in this action and I am seeking class action certification because I know this customary practice has effected many Inmates at H.C.I.

10

35) Jimmy Locklear, like so many other inmates here at HCI, is unable to read or write and is retarded. I, Jason Smith, did my best to write a grievance for him, but he was unable to recall specific information about who locked him in these cages overnight, and exact dates that this occurred. The particulars of his experience will have to be gleaned from prison records during the discovery phase.

36) Plaintiff Curtis Cardwell was attacked and assaulted by another inmate on 2/24/21, before I could completely take his statement, however I have alleged facts sufficient to state a claim on the grounds of 8th Amendment violations. I will include a stamped envelope with this filing so that the Clerk can provide Plaintiff Cardwell with a copy of this Complaint so he can amend it to include facts sufficient to state a claim should the court find his filing deficient in some way. I will be making a separate motion for class certification as well as one for the appointment of NC Prisoner Legal Services due to the fact that I cannot provide legal services to other inmates.

37) HCI consist of approximately 28 different cell blocks, each housing approximately 34 men. In our cell block alone, there are 3 Plaintiffs who have spent the night in these cages. Upon information and belief 100 inmates have spent the night in such cages in the last 6 months.

11

## VI.     ADMINISTRATIVE PROCEDURES

*WARNING: Prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions. 42 U.S.C. § 1997e(a). Your case may be dismissed if you have not exhausted your administrative remedies.*

Have you filed a grievance concerning the facts relating to this complaint?    ☑ Yes    ☐ No
      If no, explain why not:

_____

_____

_____

_____

_____

Is the grievance process completed?    ☐ Yes    ☑ No
      If no, explain why not:

Plaintiffs Smith and Cardwell's grievances are complete and attached. Plaintiff Locklear's grievance is still being processed and will be provided to the Clerk as soon as it is completed. Upon information and belief, Locklear's grievance will be completed prior to the screening of this complaint, in the next 4-6 weeks.

## VII.     RELIEF

*State briefly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.*

Plaintiff Jason Smith wants $1,000 compensation for every hour over the 4 hour legal limit of time he spent in this cage. That's $57,000 in compensatory damages and $100,000 in punitive damages. Smith also wants signs posted in every cage stating the rules for their usage along with a log sheet showing when each person was placed inside and when they were taken to the bathroom. Plaintiffs Jimmy Locklear and Curtis Cardwell want the same things.

## VIII.  PRISONER'S LITIGATION HISTORY

*The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in forma pauperis in federal court if that prisoner has "on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. §1915(g).*

Have you brought any other lawsuits in state or federal court while a prisoner?　　　　☐ Yes　☒ No

      If yes, how many? _____

Number each different lawsuit below and include the following:

- Name of case (including defendants' names), court, and docket number
- Nature of claim made
- How did it end? (For example, if it was dismissed, appealed, or is still pending, explain below.)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## IX. PLAINTIFF'S DECLARATION AND WARNING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.**

*Each Plaintiff must sign and date the complaint and provide prison identification number and prison address.*

2/26/21
Dated

_Jordan D. Smith_
Plaintiff's Signature

Jason Smith
Printed Name

0696180
Prison Identification #

P.O. Box 1569    Lillington    NC    27546
Prison Address    City    State    Zip Code

Curtis Cardwell    1165268

Jimmy Locklear #05230092

Jimmy Locklear